**Opinion issued December 31, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-18-00967-CR**

**NO. 01-18-01095-CR**

————————————

**THE STATE OF TEXAS, Appellant**

**V.**

**AMIRALLI DODHIYA, Appellee**

On Appeal from the County Court at Law No. 5
Fort Bend County, Texas
Trial Court Case No. 17-CCR-194048 and 17-CCR-194049

**MEMORANDUM OPINION**

A DPS trooper watched Amiralli Dodhiya make a right turn in a manner the

trooper described as a traffic offense, followed Dodhiya for about four minutes,

and then pulled him over. The trooper arrested Dodhiya for driving while

intoxicated.[1] Dodhiya moved to suppress evidence obtained after his traffic stop, arguing the trooper did not have reasonable suspicion or probable cause to conduct the traffic stop. Following a hearing, the trial court granted Dodhiya's suppression motion.

In two issues, the State contends the trial court erred by granting the motion to suppress. The State contends it was undisputed that Dodhiya committed a traffic offense in the trooper's presence and argues the traffic offense provided reasonable suspicion for the traffic stop. The State points to the trooper's testimony that he witnessed Dodhiya turn into the middle lane and that he had reasonable suspicion Dodhiya committed a traffic offense in doing so. The trooper's testimony was consistent with video evidence, and the trial court's findings indicate the court found the trooper credible. Therefore, the traffic stop was lawful, and the motion to suppress was without merit. Because the trial court erroneously focused on the trooper's subjective motivations and, in doing so, misapplied the law, we reverse.

## The Traffic Offense and Stop

Department of Public Safety Trooper T. Cardenas was patrolling Highway 6 in Fort Bend County during an overnight shift. Just after 2:00 a.m., Cardenas saw a vehicle on West Airport Road approach the intersection with Highway 6 and turn

---

[1] Dodhiya was charged with driving while intoxicated and resisting arrest, search, or transportation. *See* TEX. PENAL CODE § 49.04 (DWI); § 38.03 (resisting arrest, search, or transportation).

2

right into the middle, southbound lane of Highway 6. According to Cardenas, the driver committed a traffic offense by turning into the middle lane because he made a "wide right turn" and did not stay "as closely as possible to the curb or edge of the roadway." *See* TEX. TRANSP. CODE § 545.101(a) ("To make a right turn at an intersection, an operator shall make both the approach and the turn as closely as practicable to the right-hand curb or edge of the roadway"). Cardenas's dashcam video was admitted into evidence. It showed the driver turn into the middle lane directly in front of Cardenas's vehicle, as Cardenas described. According to Cardenas, after the driver entered the middle lane, he "tried to straighten up" but "crossed over into the left [lane] a little bit" but then "came back over" into the middle lane again. Cardenas testified he saw the driver leave his lane "a few times" as he followed him.

Cardenas explained that he did not immediately stop the driver because he "wanted to see more of the driver's behavior." Cardenas followed the vehicle another mile and a half. During that time, the driver moved into the left lane, turned left, and then turned onto a street with a roundabout. Cardenas testified that the driver used appropriate turn signals and stayed in his lane through each of these maneuvers. Eventually, the driver turned into a residential subdivision, and Cardenas initiated the traffic stop. The stop occurred approximately four minutes

3

after the driver entered Highway 6 by turning into the middle lane. Dodhiya was the driver of the vehicle. Cardenas arrested Dodhiya for driving while intoxicated.

**Reasonable Suspicion to Support a Traffic Stop**

In two issues, the State contends the trial court erred in concluding the trooper lacked reasonable suspicion and in granting Dodhiya's motion to suppress.

## I.   Standard of review

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We apply a bifurcated standard of review, giving almost total deference to a trial court's findings of historical fact and credibility determinations that are supported by the record, while reviewing questions of law de novo. *Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013); *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We view the evidence in the light most favorable to the ruling and uphold the ruling if it is correct on any theory of law applicable to the case. *Absalon v. State*, 460 S.W.3d 158, 162 (Tex. Crim. App. 2015).

## II.   Applicable law

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). To suppress evidence because of an alleged Fourth

4

Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Id.* Once the defendant has made this showing, the burden of proof shifts to the State, which is required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).

A law enforcement officer may lawfully stop a motorist when the officer has probable cause to believe the motorist has committed a traffic violation. *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000). An officer may also lawfully stop a motorist when, based on the totality of the circumstances, the officer has specific articulable facts that, combined with rational inferences from those facts, provide reasonable suspicion the person is, has been, or soon will be engaged in criminal activity. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App.), *cert. denied*, 565 U.S. 840 (2011) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)); *see Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015); *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013). The reasonable-suspicion standard requires only "some minimal level of objective justification" for the detention. *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010).

The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention; the officer's subjective intent is disregarded. *State v. Kerwick*, 393 S.W.3d 270, 274 (Tex. Crim. App. 2013); *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). Whether the facts known to the officer amount to reasonable suspicion is a mixed question of law and fact subject to de novo review. *Hamal*, 390 S.W.3d at 306; *State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012).

If an officer has a reasonable basis for suspecting that a person has committed a traffic offense, the officer may legally initiate the traffic stop. *Jaganathan*, 479 S.W.3d at 247. There is no requirement that the driver actually be guilty of the traffic offense; it is sufficient that the officer had a reasonable suspicion the driver committed the traffic offense. *Id.*; *Cook v. State*, 63 S.W.3d 924, 929 n.5 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

Thus, at the suppression hearing, the State was not required to establish that Dodhiya committed a traffic offense; it was enough to elicit testimony from Trooper Cardenas to establish that reasonable suspicion existed that Dodhiya had committed a traffic offense. *Jaganathan*, 479 S.W.3d at 247; *see Milligan v. State*, No. 03-12-00485-CR, 2014 WL 3562714, at *3 (Tex. App.—Austin July 18, 2014, no pet.) (mem. op., not designated for publication) ("Reasonable suspicion may be

validly based on articulable facts that are ultimately shown to be inaccurate or false.").

## III.    The reasonable-suspicion standard was met

Trooper Cardenas testified he saw Dodhiya turn onto Highway 6 by entering the middle of three southbound lanes. He testified he had reasonable suspicion this action violated the Transportation Code because Dodhiya did not turn into the farthest right lane, closest to the curb. *See* TEX. TRANSP. CODE § 545.101(a).

At the conclusion of the suppression hearing, the trial judge's remarks make clear he found Trooper Cardenas credible. Additionally, the video evidence, which we have reviewed, shows a vehicle pull into the middle lane directly in front of Trooper Cardenas's vehicle, as Cardenas described.

It was not relevant to the trial court's reasonable-suspicion analysis whether Dodhiya actually committed a traffic offense; it was sufficient that Trooper Cardenas credibly testified to articulable facts to establish reasonable suspicion of a traffic offense. *Jaganathan*, 479 S.W.3d at 247. Cardenas did so.

## IV.    The trial court erred by misapplying the law when it overlaid the proper objective analysis with an evaluation of Trooper Cardenas's subjective reasoning

In its findings, the trial court inferred that Cardenas did not immediately pull Dodhiya over because Cardenas subjectively chose to give Dodhiya "the benefit of the doubt." The trial court inferred a subjective motivation to abandon one already-

established basis for a valid traffic stop (i.e., the illegal right turn) and to investigate, instead, a possible different offense (i.e., driving while intoxicated). The trial court's findings were stated as follows:

> It is the opinion and finding of this Court—Trooper Cardenas is an excellent trooper. He has good experience. He is doing his job in every way, in the right way. . . .
>
> [I]t is entirely appropriate for Trooper Cardenas to not make a stop of the initial vehicle when it makes its right turn. On that initial right turn, a trooper or police officer similarly situated can give someone *the benefit of the doubt* . . . . There are a lot of reasons to give a driver . . . the benefit of the doubt in making a right turn onto a highway, like Highway 6 . . . .
>
> And it's the finding of the Court that de facto this driver of this vehicle . . . was given the benefit of the doubt by not being stopped right away on his right turn. . . . I think Trooper Cardenas did the right thing. He followed this defendant, took his time, exercised his patience, exercised professionalism and actually investigated . . . whether or not there were articulable facts to support reasonable suspicion to engage in a temporary detention . . . of the driver of the vehicle. Under the facts of this case, . . . [the] entire driving pattern engaged in by the defendant demonstrated that there were no articulable facts to support reasonable suspicion to investigate the driver of this vehicle *for driving while intoxicated. . . .*
>
> So it's the opinion of this Court to grant the Motion to Suppress, and it's the opinion of this Court to encourage Trooper Cardenas to do exactly what he did, in every way, again, every time he sees somebody who he suspects he should stop.

(Emphasis added.)

The trial court found there was no reasonable suspicion of the offense of driving while intoxicated based on Cardenas's testimony, supported by video

8

evidence, that Dodhiya appropriately used his turn signals, maintained his lane, and did not otherwise display bad driving as Cardenas continued to follow him several minutes after the right turn into the center lane. But in doing so, the trial court erroneously allowed its analysis to veer from the objective view of the traffic-offense evidence into the subjective motivations of Cardenas in continuing to watch Dodhiya's driving pattern.

The caselaw is clear that reasonable-suspicion is an objective standard, and the officer's subjective intent or motive should be disregarded. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011); *Wiede*, 214 S.W.3d at 25; *State v. Houghton*, 384 S.W.3d 441, 447 n.4 (Tex. App.—Fort Worth 2012, no pet.). Once Trooper Cardenas credibly testified to articulable facts to establish a reasonable suspicion that Dodhiya made an illegal right turn, the State met its burden to permit the traffic stop. Whether Cardenas subjectively wondered if there might be a more significant offense underway, including a DWI, was not relevant to the objective analysis required. *See Elias*, 339 S.W.3d at 674.

We conclude the trial court misapplied the law when it extended its analysis to evaluate Trooper Cardenas's subjective motivation for following Dodhiya and permitted that subjective motivation to negate the objective reasonable suspicion

9

established by Cardenas's credible testimony and video evidence.[2] *See Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (concluding court of appeals erred in looking beyond sufficient evidence of objective reasonable suspicion to consider officer's subjective motivations); *cf. State v. Ysassi*, No. 04-17-00740-CR, 2018 WL 6624896, at *3 (Tex. App.—San Antonio Dec. 19, 2018, no pet.) (mem. op., not designated for publication) ("Because Sergeant Williams's observations of Ysassi's driving behavior constituted a traffic violation, he had reasonable suspicion to stop Ysassi regardless of his subjective intent.").

Dodhiya raises for the first time on appeal a second argument why the trial court could have granted the motion to suppress: that the traffic stop was illegal because it was not completed within a reasonable time and distance of the wide-right-turn traffic offense, relying on language in *State v. Dixon*, 206 S.W.3d 587, 592 (Tex. Crim. App. 2006). He states in his appellate brief that the trial court "was entitled to make a factual determination on whether too much time and distance had passed."

---

[2]     In reaching this conclusion, we note the trial court's findings are distinguishable from those in *State v. Dixon*, 206 S.W.3d 587 (Tex. Crim. App. 2006). There, the trial court found an officer's explanation of an observed traffic violation as the basis for a traffic stop to not be credible. *Id.* at 590–91. Here, the findings do not indicate the trial court found Cardenas not credible. They indicate, instead, the trial court found Cardenas to be credible yet ruled to suppress the evidence based on a misapplication of the reasonable-suspicion standard.

Dodhiya argues that an otherwise erroneous ruling can be affirmed if "it is correct on any legal theory" and that his newly stated theory about unreasonable time and distance is legally correct. But Dodhiya misstates the test. When presented with an erroneous ruling, the issue on appeal "is not whether the decision is correct on *any* theory of law, but whether it is correct on any theory of law *applicable to the case.*" *Sedani v. State*, 848 S.W.2d 314, 319 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). A theory that was never raised is not a theory applicable to the case. *Id.*

Dodhiya's presentation of evidence and legal argument at trial focused on whether Trooper Cardenas was credible in stating that the wide right turn was the basis for the stop. In effect, Dodhiya argued that, if Cardenas really thought at the time that the right turn was a traffic violation, Cardenas would have pulled Dodhiya over immediately. Dodhiya argued the right turn was an after-the-fact justification for the stop.

Dodhiya never argued to the trial court that the traffic stop was illegal because an unreasonable delay negated the basis for the stop. Nor did the trial court make any findings in that regard or indicate it considered such a basis for suppressing evidence. The trial court instead considered whether Cardenas credibly testified, inferred that Cardenas followed Dodhiya due to subjective motivations, and concluded there was no reasonable suspicion of the offense of drunk driving.

11

Dodhiya notes in his appellate brief that the trial court *could have* made a determination "whether too much time and distance had passed." But the trial court did not, and Dodhiya never raised the issue.

Dodhiya's legal argument raised for the first time on appeal is not a theory of law applicable to the case and does not supply a basis for affirming an otherwise erroneous ruling. *See id.* at 319–20.

## Conclusion

We reverse and remand for additional proceedings.


Sarah Beth Landau
Justice

Panel consists of Justices Lloyd, Goodman, and Landau.

Do not publish.  TEX. R. APP. P. 47.2(b).